DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | CASE NO. 5:06 CR 162 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | ANALYZING THE SENTENCING |
| Ronald Dede, | ) | FACTORS SET FORTH IN |
| | ) | 18 U.S.C. § 3553(a) |
| Defendant. | ) | |

### I. Introduction

The Court conducted the sentencing hearing of the defendant Ronald Dede. The Court determined that the defendant's total offense level was 34 with a criminal history category of II calling for a sentencing range under the advisory sentencing guidelines of 168 to 210 months. At the conclusion of the sentencing hearing, the Court sentenced the defendant to confinement for a period of 180 months with supervised release for a period of five years.

### II. The Analysis Required by 18 U.S.C. § 3553(a)

The Court sets forth its analysis of the sentencing factors required by *Booker* and the statutory guidance provided by 18 U.S.C. §3553(a) as follows:

(5:06 CR 162)

### (a) Factors to be considered in imposing a sentence.

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider:

**(1) The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant.**

In July 2003, various law enforcement agencies began to initiate an investigation into the drug dealing activities of the Ronald Dede Drug Trafficking Organization (DTO), after receiving information that Dede was a Los Angeles based supplier of cocaine distributing cocaine in Stark County, Ohio.

Approximately three months of wiretaps were involved. The investigation established that the defendant would arrange with his Arizona suppliers for a delivery of cocaine to Canton, Ohio.

Prior to the actual delivery of the cocaine, the defendant would fly into either Cleveland or Pittsburgh where he would be met by co-conspirators Walter Dennis, Jr. or Portia Dennis who would drive him to Canton, Ohio. The defendant would then collect the monies owed by his customers from the previous shipment of cocaine.

Shortly after the funds were collected, Sanchez, Dawson and Epps would arrive at the same time as the drugs. Dawson and Epps would check to be sure that Dede had the money owed from the previous shipment and once they were satisfied the drugs would be delivered. In the last shipment on March 9, 2006, the drugs were driven here in a car with a hidden compartment. The load car was driven to the stash house where Dede, Dawson and Epps were staying. The drugs were unloaded and the money put in the car.

Once Dede had the cocaine, he would go about the job of distributing them to his customers. Dede would stay in Canton a few days and then return to California until it was time to arrange the next shipment.

As a result of Title III surveillance, they knew that a shipment was coming in the week of March 9, 2006. Law enforcement surveilled the load car to the stash house on Baldwin Avenue, where Dawson and Epps carried a duffle bag and laundry basket to the garage. Once the delivery was made in the garage, the load car was returned to the custody of the

2

(5:06 CR 162)

"mule," co-defendant David Mayberry.  When the highway patrol pulled the load car over for a traffic stop they discovered approximately $956,000 in cash hidden in the trunk.

During the course of the Title III telephone surveillance, there were times when Ronald Dede requested Portia Dennis to wire him small amounts of money to pay bills.  She and her brother stored drug money from the sale of the kilos pending the defendant's return to Canton, Ohio.

Search warrants were issued and 52 kilograms were found in the garage at the stash house. Numerous weapons were found in the stash house.

According to the government, an inventory sheet uncovered a number of firearms found in the northwest bedroom which was associated with the defendant.

### Adjustment for Acceptance of Responsibility

On August 15, 2006, the defendant was interviewed, in the presence of counsel, and provided the following statement, which is included verbatim:

*"I accept responsibility for the crime I committed.  I am very sorry for what I did. I did this crime, because of money situations and family pressures.  I will never commit another crime.  I will not sell any more drugs what so ever in my life.  I will be working a regular job when I get back in society, and staying home with my family, and grand kids, also I will be working on opening a Optemery Business, working on eyeglasses, and keeping busy with my local church functions."* [sic]

The defendant is 54.  He has one dependent child.  He has a college degree.  He was the only child born to the marriage of his parents which ended in legal separation when the defendant was approximately ten.  He was raised by his mother and had no contact with his father after the separation of his parents and never established a relationship with his father before his death 30 years ago.  His mother died 15 years ago.  The defendant has never married but fathered four children with three women and he contends that he maintains contact with each of his children who range in age from 35 to 13.  He was living in California at the time of his arrest.

3

(5:06 CR 162)

The defendant reports that his health is good but does take medicine for high blood pressure.

The defendant acknowledges a history of substance abuse which includes marijuana and cocaine. The defendant's educational history is unusual. He quit after the 8th grade but subsequently obtained a GED and indicates he enjoys a Bachelor of Science degree in Political Science from CalState University in Los Angeles, California. The defendant has a very spotty employment record.

The defendant, through newly appointed defense counsel, filed a sentencing memorandum on August 24, 2007. (See Docket No. 278). The defendant reports that since his incarceration, he has attended in excess of 75 AA meetings and attached a sign-in list in support of the representation.

**(2) The need for the sentence imposed.**

**(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense**

The defendant played the major role in the interstate trafficking of cocaine which resulted in the indictment involving multiple defendants as well as the seizure of a large quantity of cocaine and currency in excess of $1.5 million. The defendant has a prior conviction for a drug offense in the Central District of California. It appears that the defendant was committed to a life of crime involving distribution and sale of large quantities of cocaine.

As a consequence, a substantial sentence is required to reflect the seriousness of his criminal conduct and promote respect for the law.

The defendant's cooperation with the government and the prosecution of the other defendants in this case has merited a downward departure for substantial assistance. Against that background,

4

(5:06 CR 162)

the Court finds that a sentence of 180 months is sufficient to reflect the seriousness of the conduct and reflect the seriousness of the law.

### (B) to afford adequate deterrence to criminal conduct

A lengthy sentence is absolutely necessary to provide adequate deterrence to criminal conduct of the type and nature which this defendant engineered and affected the general community of the greater Canton, Ohio area.  A sentence of 180 months will, in the Court's opinion, provide adequate deterrence for the type of criminal conduct which this man in his 50's decided was a proper endeavor in spite of the risks involved to not only himself but also to members of the community.

### (C) to protect the public from further crimes of the defendant

The defendant will be approaching 70 by the time of his release from confinement. Hopefully, the defendant will choose to avoid further criminal conduct in the view that it is not worth the risk

### (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

The defendant should have the opportunity to engage in a drug treatment program prior to his release so that he does not revert to the use of drugs.  The defendant has a limited employment background.  Presumably, he will have the opportunity, while incarcerated, to participate in Prison Industries and possibly learn a trade that will give him the opportunity to find gainful employment upon release, even at his age.

### III.  Consideration of the Need to Avoid Unwarranted Sentencing Disparities Among Defendants Who Have Been Found Guilty of Similar Conduct as Required by 18 U.S.C. § 3553(a)(6)

(5:06 CR 162)

The indictment in this case names the following defendants:

1. Ronald Dede
2. Craig Dawson
3. Oswaldo Sanchez
4. Hakim Malek Ali
5. Letricia Epps
6. Ronald Lucas
7. Rodney Petties
8. Charles Petties
9. Walter Dennis, Jr.
10. David Mayberry
11. Portia Dennis

At this point in the sentencing process, the Court has sentenced the following defendants to the following terms of imprisonment after finding, with respect to each defendant, the offense level and the criminal history:

1. Craig Dawson - Offense level 34 with a criminal history category of I calling for a sentencing range of 151 months to 188 months with an imposed sentence of 151 months imprisonment with five years supervised release.

2. Letricia Epps – Offense level 31 with a criminal history category of III calling for a sentencing range of 135 to 168 months with an imposed sentence of 135 months imprisonment with five years supervised release.

3. Ronald Petties – Offense level 31 with a criminal history category of I calling for a sentencing range of 120 to 135 months with an imposed sentence of 124 months imprisonment with five years supervised release.

4. Charles Petties – Offense level 23 with a criminal history category of II calling for a sentencing range of 51 to 63 months with an imposed sentence of 63 months imprisonment with four years supervised release.

5. David Mayberry – Offense level 26 with a criminal history category of I calling for a sentencing range of 63 to 78 months with an imposed sentence of 70 months imprisonment with four years supervised release.

(5:06 CR 162)

6. Ronald Lucas – Offense level 27 with a criminal history category of I calling for a sentencing range of 70 to 87 months with an imposed sentence of 84 months imprisonment with five years supervised release.

7. Hakim Malik Ali – Offense level 29 with a criminal history category of II calling for a sentencing range of 97 to 121 months with an imposed sentence of 97 months imprisonment with five years supervised release.

8. Walter Dennis, Jr. – Offense level 27 with a criminal history category of II calling for a sentencing range of 78 to 97 months with an imposed sentence of 78 months imprisonment with five years supervised release.

9. Portia Dennis – Offense level 21 with a criminal history category of III calling for a sentencing range of 46 to 57 months with an imposed sentence of 27 months imprisonment with two years supervised release.

The following defendant has not been sentenced:

Oswaldo Sanchez (Fugitive)

### IV.  Conclusion

For the reasons set forth herein, a sentence of 180 months with supervised release for five years and within the advisory guideline range, is a sentence sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. §3553(a)(2) and (4).

IT IS SO ORDERED.

August 27, 2007                  */s/ David D. Dowd, Jr.*
Date                                David D. Dowd, Jr.
                                           U.S. District Judge